or could not, recover it from him, will, I think, make no material difference as to the prefent motion. It muft, however, be obferved, that, if he can claim this money at all, it muft be *under the execution*, and as execution creditors are faved, it would be very queftionable whether the Commiffioners could recover it from him. If they *could not*, then the creditors at large muft be poftponed to him and the other judgment creditors;—if they *could* recover it, then it would not only be a vain thing to order the money into his hands, as he muft, by a circuity of action, be obliged to refund it, but it would, in fact, be ordering it into the hands of a perfon not intitled to receive it : And the confequence would be, that the real execution creditor, whofe claim is faved by the act, would infallibly be cut out of his preference.

Whether this is, or is not, a *bona fide* debt, is not the fubject of our prefent enquiry. If any fraud could be proved, this Court would certainly on motion fet afide both the execution and the judgment, but that could not be for the benefit of the prior judgment creditor, whofe claim is founded *upon the execution*; but for the benefit of the creditors at large under the Commiffion; who may ftill have a remedy by action, if they can fhew the execution to have been collufive and unfair.

The only queftion, however, now before us, is whether a prior judgment creditor fhall come in under this execution, which we think he cannot, as it would defeat the exprefs intent of the bankrupt law.

## M‘CLENACHAN et al. *verfus* M‘CARTY.

THIS was a Foreign Attachment, in which judgment was entered at the third term ; and a writ of inquiry being afterwards executed, a motion was made, on behalf of the Defendant, to quafh the return, becaufe the Sheriff and Inqueft had refufed to hear his evidence at the time of executing the writ.

On the argument the nature of the evidence that had been excluded, was ftated, and *Ingerfoll*, in fupport of the motion, contended—1ft, That, upon general principles, both parties are entitled to be heard before the Inqueft ; and that, although they are bound to find fome damages, yet, if there is no proof of any being fuftained, they will find no more than a fingle penny ; and that merely to fatisfy the form of the proceeding. The writ commands the Inqueft *diligently to enquire what damages &c.* fo that to inform their confciences, they ought certainly to hear the allegations of both parties ; and if they affefs the damages too high, or too low, their return will be fet afide, which proves that the Court has a fuperintending power over Juries of Inquiry. 2 *Lill. Abr.* 721. 2. *Sayre's Law of Dam.* 123. 193 203. 233. It is a maxim, indeed, that damages cannot be affeffed without a Jury. 3 *Bl. Com.* 395. 396. 7.

and

and it is clear that under the rules at *Nisi Prius*, a Defendant may submit to judgment being entered, and yet contest the matter before the Jury of Inquiry, so as to affect the *quantum* of damages, for which the judgment shall stand.—2dly, The case of a *Foreign Attachment* makes no exception to the general rule. In *London* only actions of debt can be brought within the custom; so that the judgment being compleat, no damages are to be assessed. There are many other points in which the *Custom of London* differs from the practice under our attachment law. Lands, and, in short, every other subject of property, are liable in *Pennsylvania* to an attachment; being as much so in his absence, as the Defendant's person would be, if he were here. But the *Custom of London* proceeds only on the supposition of a debt due from the Garnishee to the Defendant. Hence the analogy between the custom there, and our practice, is very trifling. The act of Assembly does not prescribe a writ of inquiry; nor does the Freeholders law, upon a judgment by default after summons; yet, in both cases, writs of inquiry are uniformly issued to assess damages; and for the plain reason already assigned, that damages cannot be assessed without the intervention of a Jury. Besides, it has been the uniform practice under the attachment law to give notice of executing the writ; which necessarily implies a right to controvert the *quantum* of damages; and the question is not whether the evidence would have availed, but whether it ought to have been heard.

*Wilson* and *Wilcocks* for the Plaintiffs.—It is in the power of the Defendant to appear, and entitle himself to a trial in Court; but it would be unjust in this manner to permit him to draw the decision of an important question from the proper tribunal. Admitting, however, that the law is what the Defendant's counsel states, where a party is completely in Court, and afterwards suffers judgment to go by default, it is not applicable to the case of an attachment, the object of which is to compel an appearance. The custom of *London*, which is certainly the ground-work of our attachment law, admits no such privilege as the Defendant now claims. In *London* the Plaintiff is not obliged to execute a writ of inquiry, or to prove his debt in Court, but merely to swear to it; nor does any expression in our act of Assembly enjoin the execution of a writ of inquiry; but that, as well as the notice in office, depends entirely upon usage; for, the only trial mentioned in the act is on the *scire facias* between the Plaintiff and Garnishee. Nor does the Legislature precipitate the cause: judgment cannot be entered 'till the third term, and twelve months afterwards are given to obtain a trial uponthe merits. In this action, likewise, the Plaintiff acquires no general lien by his judgment, as in other actions, but can only issue execution against the property attached: so that, upon the whole, there can be no reason, on principles of equity, that the Defendant should be heard without putting in special bail. The Freeholders act can furnish no argument; for the law in that case, prescribes a mode by which
the

the Defendant fhall be brought into Court; but, in an attachment, the Defendant is never in Court until bail is filed.

Shippen, *Prefident.*—This is a motion to fet afide the inquifition, of a Jury of Inquiry in a foreign attachment, on the ground of the Defendant's evidence being refufed to be heard before the Sheriff and Inqueft, on the execution of the writ of inquiry.

On the part of the Plaintiffs two points have been made and argued :—

1ft, That on the execution of writs of Inquiry generally, no evidence on the part of the Defendant ought to be heard, as by fuffering judgment to go by default, he had admitted the Plaintiffs caufe of action; and that, therefore, evidence on the part of the Plaintiffs only fhould be heard.

2dly, That, although it were admitted, that, generally, on executing writs of Inquiry, after an interlocutory judgment, fuch evidence might be heard; yet, in thofe cafes where writs of Inquiry are executed to afcertain the Plaintiff's demand, after judgments on *foreign attachments,* no fuch evidence fhould be admitted; becaufe the foreign attachment iffues only to compel an appearance, and the Defendant has it in his power, even after the return of the Inquifition, by entering fpecial bail, to try the caufe in the ufual manner, before a Court and Jury.

As to the *firft point,* the law feems fettled, that, after a judgment by default, the Defendant has a right to offer his evidence to the Jury of Inquiry to combat the Plaintiff's proofs; and that where the Sheriff refufes to hear the evidence on both fides, the Court will direct a new writ of Inquiry.

As to the *fecond point,* it will be neceffary to confider the law of attachments of 1705, and the practice under it, together with the reafons and extent of that practice.

The Legiflature, in framing this act, certainly took for their model the Cuftom of *London,* concerning foreign attachments; the principles of the law and mode of proceeding are in many refpects conformable to that Cuftom; and the difference appears to be lefs in the act itfelf, than in the practice under it. In *London* the proceeding is by plaint againft the Defendant, fupported by the oath of the Plaintiff. On this is founded the attachment and proceedings againft the Garnifhee; but no further proceeding is had againft the Defendant till he enters fpecial bail, and then a declaration is filed and a trial had in the ufual way. The practice under our act is firft to obtain judgment againft the Defendant, then to file a declaration againft him according to the nature of the demand; if *in debt,* the judgment ftands for the fum declared for, without even an oath to fupport it; if *in cafe,* a writ of Inquiry iffues for a Jury to afcertain the demand, and then the *fcire facias* iffues againft the Garnifhee. No actual Notice is given to the Defendant of the execution of the writ of Inquiry; his attendance is never expected, and

B b b                                                                 is

1788.

is in moft cafes impoffible.    It feems to be a mode adopted,  not for a trial of the merits, but only to conform to the nature of an action on the cafe, which requires a Jury of Inquiry to afcertain the fum for which execution is to iffue; and it may be confidered as a proceeding to inform the confcience of the Court, in the room of the fuppofed oath in the action of debt.    In its nature it appears to be an *ex parte* proceeding, and not within the reafon of the rules in executing writs of Inquiry on Judgments by default; where the Defendant has regular notice, and has no other opportunity of making a defence.

The attachment law, and all proceedings under it, fuppofe the Defendant to be an abfent perfon, and *he has, in truth, no day in Court,* till he enters fpecial bail, and thereby diffolves the attachment; or comes in afterwards, when the money is recovered from the Garnifhee, to difprove the debt, which is done by a *fcire facias ad disprobandum debitum*; in either of which cafes, he puts the Plaintiff upon the legal proof of his demand, and is admitted to make a full defence.    The right of making that defence before the Jury of Inquiry has no foundation either in the act or the practice under it.—The law fuppofes, from his abfence, that he is then incapable of making a defence; and, for that reafon, has afforded him ample time and opportunity afterwards to do it; nor does it accord with legal ideas, that he fhould have this opportunity of trying his caufe, and alfo another afterwards upon entering fpecial bail.

It has been faid, that notice of executing thefe writs of Inquiry has been ufually fet up in the Prothonotary's and Sheriff's Offices; and that this notice would be vain, if the party might not appear and make his defence.    This practice of putting up notices, muft have been introduced by the Gentlemen of the Law *ex majore cautela.* If it were a new cafe, we fhould perhaps think it nugatory; as a perfon abroad cannot be fuppofed to take notice of a paper put up in the office, which he could never fee.    However, as it *is* the practice, it is proper it fhould be continued; and it may, at leaft, ferve the purpofe of giving the Garnifhee, or the Attorney in fact, of the Defendant, an opportunity of knowing, and apprizing his conftituent, of the nature of the Plaintiff's demand, that he may be prepared to defend himfelf againft it.

Upon the whole, we are of opinion, that the refufing to admit the Defendant in the attachment to produce his evidence before the Jury of Inquiry, is not a fufficient reafon for fetting afide the Inqualition.

Rule difcharged.

## PENROSE *verfus* HART.

ON a rule to fhew caufe why the Judgment confeffed by warrant of Attorney in this cafe fhould not be opened, *Fifher* ftated that feveral partial payments had been made by the Defendant,

which